**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **DONOVAN KING** | **CIVIL ACTION** |
| **VERSUS** | **NO. 25-2171** |
| **TRAVIS DAY, ET AL.** | **DIVISION: (5)** |

**<u>ORDER AND REASONS</u>**

Before the Court is the Motion for Summary Judgment (rec. doc. 14) filed by Defendants, Travis Day, Austin Seals, Lt. Henry McMurray, Sgt. Matthew Sheridan, Sgt. John Pounders, and Sgt. Mason Little (collectively, "Defendants").[1]  Plaintiff filed no opposition to the motion.  Having reviewed the pleadings and the applicable law, the Court rules as follows.

## I.    Background

*Pro se* prisoner Donovan King brought this lawsuit under 42 U.S.C. § 1983 against all six Defendants for alleged incidents at the Rayburn Correctional Center ("RCC"), where he is incarcerated.  Plaintiff filed suit in the United States District Court for the Eastern District of Louisiana on October 21, 2025, challenging the conditions of his confinement.  (Rec. doc. 1-2).  Plaintiff makes the following allegations in his Complaint:

> On July 15, 2025, I was kicked, stomped, beatin [sic] in the medical room in Sun Unit while on suicide watch by those officers.  I was thrown out the chair with the nurse in the room to the point where I caught a seizure and had to be brought to bogalusa [sic] hospital for X-rays and Ct-scans.  I received multiple injuries and had to be given strong pain medicine.  No one did anything to stop them from beating me.

---

[1] The parties consented to proceed before the undersigned on April 7, 2026.  (Rec. doc. 16).

(Rec. doc. 1 at 3).  Plaintiff appears to seek either $2 or $12 million dollars in monetary damages.  (*Id.*).  He would also "like a (polygraph) lie detector test be taken by everyone involved to show what I'm saying is true."  (*Id.*).  Plaintiff further requests that his "records from going to bogulsa [sic] hospital and here from rayburn correctional be put on record in open court to be shown as well."  (*Id.*).

In his Complaint, Plaintiff states that "[h]e filed Arp [sic] on 8-11-25 and was denied due to having multiply [sic] complaints in one arp [sic].  I then broke down each situation that occur [sic] in 6 arps [sic] on 8-13-25 and still haven't received a reply.  Here is a copy of the response, from them denying me and a copy of the Arp [sic] that was denied."  (*Id.* at 2).  Plaintiff attached a typed copy of his Administrative Remedy Procedure ("ARP") RCC-2025-484 to his Complaint.  (Rec. doc. 1-1 at 2-3).  There is a dispute as to whether this is the actual ARP that Plaintiff submitted to the RCC.  That ARP was hand-written, as reflected in the certified copy of ARP RCC-2025-484 attached to Defendant's pleading as Exhibit A.  (Rec. doc. 14-3 at 1-4).[2]  The hand-written ARP that Plaintiff submitted to the RCC contained multiple allegations against various RCC officers and staff regarding distinct incidents that allegedly occurred between June 3, 2025 to July 16, 2025.  (*Id.* at 2-4).  In his ARP, Plaintiff requested that camera footage be "reviewed and saved to see everything that I am saying is true," and requested "to be compensated," though Plaintiff did not request any specific monetary amount.  (*Id.* at 4).

---

[2] The typed ARP that Plaintiff attached to his Complaint (rec. doc. 1-1 at 2-3) appears to mirror the bulk of the substance of the hand-written ARP that was actually submitted by Plaintiff to RCC. However, the typed copy of Plaintiff's ARP and the rejection of his ARP, which Plaintiff attached to his Complaint as R. Doc. 1-1, contain hand-written additions that were not part of the submitted ARP or the provided rejection.

Plaintiff also attached to his Complaint Warden Day's rejection of ARP RCC 2025-484, dated August 11, 2025.  (Rec. doc. 14-3 at 5).  The rejection specifically states:

> Your request has been rejected for the following reason(s):
> Established Rules and Procedures were not followed.  In accordance with Department Regulation, this ARP/grievance contains multiple complaints.  Multiple complaints cannot be contained in one ARP.  Each complaint must be filed separately.  Additionally, this complaint contains a Repetitiveness to ARP #RCC-2025-452.  You are instructed to speak with your inmate counsel substitute should you require further assistance in this matter.

(*Id.*).  Despite Plaintiff's assertion that he "broke down each situation that occur [sic] into 6 arps [sic] on 8-13-25 and still haven't received a reply," the certified records and declaration of Stacy Rowell, the Administrative Program Specialist C, show that Plaintiff took no further action in connection with ARP RCC-2025-484 after it was rejected, nor did Plaintiff file any other ARP subsequent to Warden Day's rejection of ARP RCC-2025-484.  (Rec. doc. 14-4).

## II.    Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)).  "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial."  *Id.*  A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is

no genuine issue of material fact. *Id.* at 323. If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id.* at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law identifies which facts are material. *Id.* Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Equal Emp't Opportunity Comm'n v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014). "[U]nsubstantiated assertions," "conclusory allegations," and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249-50; *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994). In ruling on a summary judgment motion, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). Further, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). Yet a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine dispute, the nonmovant must articulate specific facts and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co. of Ill.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A) & (c)(2). Such facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary judgment burden. *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(B). Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075-76.

## III.    Law and Analysis

At the time of the incidents alleged in the Complaint – including when he filed this lawsuit – Plaintiff was, and is still, incarcerated at RCC in Angie, Louisiana. (Rec. doc. 1). Accordingly, this lawsuit is governed by the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e.

Under 42 U.S.C. §1997e(a), an inmate is required to exhaust available prison administrative remedies before bringing suit. This exhaustion obligation is mandatory. *Valentine v. Collier*, 956 F.3d 797, 804 (5th Cir. 2020) (citing *Booth v. Churner*, 532 U.S. 731, 741 n. 6 (2001)). The statute, enacted in 1996 as part of the PLRA, provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any

other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).

Federal courts have taken a strict approach to the exhaustion requirement.  The United States Supreme Court has held that the exhaustion requirement is "mandatory" and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002).  Exhaustion must be properly followed and fully comply with applicable prison procedural rules and deadlines, and "substantial compliance with administrative procedures is insufficient to permit pursuit of a federal lawsuit."  *Guy v. LeBlanc*, No. 13-2792, 2015 WL 65303, at *9 (E.D. La. Jan. 5, 2015) (citing *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001)).  Exhaustion of administrative remedies is essentially a condition precedent to bringing suit.  *See Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012).  "Pre-filing exhaustion is mandatory, and the case must be dismissed if available administrative remedies were not exhausted."  *Id.*

The Fifth Circuit has emphatically held that the mandatory exhaustion requirement may not be excused by a federal court:

> . . . [T]here can be no doubt that the pre-filing exhaustion of prison grievance processes is mandatory.  We thus hold that *Underwood* [*v. Wilson*, 151 F.3d 292 (5th Cir. 1998),] has been tacitly overruled and is no longer good law to the extent it permits prisoner lawsuits challenging prison conditions to proceed in the absence of pre-filing administrative exhaustion. District courts have no discretion to excuse a prisoner's failure to properly exhaust the prison grievance process before filing their complaint.  It is irrelevant whether exhaustion is achieved during the federal proceeding.  Pre-filing exhaustion is mandatory, and the case must be dismissed if available administrative remedies were not exhausted.

6

*Id.* (alteration added). "Although the mandatory nature of the exhaustion requirement may seem harsh, it is necessary to accomplish the PLRA's goals." *Milton v. Edwards*, No. 16-17076, 2018 WL 1251555, at *2 (E.D. La. Mar. 12, 2018). Inmates must strictly comply with all administrative requirements because failure to follow established procedures or to complete all levels of administrative review is fatal to a prisoner's suit. *See Valentine*, 978 F.3d at 162 ("Plaintiffs' failure to exhaust their administrative remedies before filing suit is fatal."); *Gonzalez*, 702 F.3d at 788 ("Pre-filing exhaustion is mandatory, and the case must be dismissed if available administrative remedies were not exhausted."). The Supreme Court has held that "to properly exhaust administrative remedies, prisoners must 'complete the administrative process in accordance with the applicable procedural rules' – rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Id.*

Louisiana has a two-step ARP for inmates that they are required to fulfill before filing suit in district court, and a prisoner has not exhausted his remedies until he has completed both steps. *See Dillon v. Rogers*, 596 F.3d 260, 265-66 (5th Cir. 2010). At the first step, the inmate initiates the process by submitting a letter or grievance to the Warden briefly setting out the basis of his claim and the relief sought within 90 days of the alleged event or incident of which the prisoner complains. *Campfield v. Tanner*, No. 10-1151, 2011 WL 4368723, at *2 (E.D. La. Aug. 16, 2011), *adopted with modification*, 2011 WL 4368842 (E.D. La. Sept. 19, 2011); *Francois v. Rigdon*, No. 09-4505, 2009 WL 4891828, at *3 (E.D. La. Dec. 9, 2009); *see also* La. Admin. Code tit. 22, Pt. I, § 325(G)(1). The warden then has 40 days to respond.

7

*Dillon*, 596 F.3d at 265-66; *see also* La. Admin. Code tit. 22, Pt. I, § 325(J)(1)(a)(ii).  If the inmate is dissatisfied with the warden's response, or if no response is received within the 40-day time period, the inmate must then proceed to the second step and appeal to the Secretary of the Louisiana Department of Public Safety and Corrections.  *Dillon*, 596 F.3d at 266; *see also* La. Admin. Code tit. 22, Pt. I, § 325(J)(1)(b)(i).  The Secretary has 45 days to respond to that request for review.  *Campfield*, 2011 WL 4368723, at *2; *Francois*, 2009 WL 4891828, at *3; La. Admin. Code tit. 22, Pt. I, § 325(J)(1)(b)(ii).  If the prisoner is not satisfied with that second-step response, he may then sue.   La. Admin. Code tit. 22, Pt. I, § 325(J)(1)(b)(iv).

ARPs are screened by an ARP screening officer prior to assignment to the first step. *Id.* § 325(I)(1).  The ARP screening officer must provide notice to the offender that his ARP is either being accepted and will be processed, or being rejected and will not be processed until any noted deficiency is corrected.  *Id.* § 325(I)(1)(a)(i)-(ii).  The Administrative Code sets forth the bases on which an ARP may be rejected, which include ARPs that contain duplicate requests,  *id.* § 325(I)(1)(c)(i)(c), and when the offender has requested a remedy for more than one incident (a multiple complaint).  *Id.* § 325(I)(1)(c)(i)(g).  "The offender shall be provided with written notification of the grounds upon which the rejection is based." *Id.* § 325(I)(1)(c)(ii).  "A rejected request is not appealable to the second step."  *Id.* § 325(I)(1)(c)(ii).  "If a request is rejected for any of the reasons listed [in the Code], the offender must correct the noted deficiencies and resubmit the request to the ARP screening officer."  *Id.*  Importantly, "[t]he offender has not properly exhausted administrative remedies if his request is rejected for any of the reasons listed [in the Code]."  *Id.* §

325(I)(1)(c)(iv); *see also Perez v. La. Dep't of Pub. Safety & Corr.*, 395 So. 3d 286, 288 (La. Ct. App. 2024) ("Since Mr. Perez's request was rejected during screening and he did not resubmit a request for an ARP with the noted deficiency corrected, his request for an ARP was not accepted for consideration, and as such, his administrative remedies could not be exhausted.") (internal citations omitted).

A prisoner has not exhausted his administrative remedies unless he has pursued the grievance remedy through the conclusion of the multi-step ARP. *See Wilson v. Epps*, 776 F.3d 296, 301 (5th Cir. 2015) ("Section 1997e's exhaustion requirement is satisfied only if the prisoner 'pursue[s] the grievance remedy to conclusion.'") (citing Wright v. Hollingsworth, 260 F.3d 357, 358 (5th Cir. 2001)); *see also* La. Admin Code tit. 22, Pt. I, § 325(E). This requirement applies even if the prison is nonresponsive. In such cases, "the prison's failure to timely respond simply entitles the prisoner to move on to the next step in the process." *Wilson*, 776 F.3d at 301. "Thus, it is only if the prison fails to respond at the last step of the grievance process that the prisoner becomes entitled to sue, because then there is no next step (save filing a lawsuit) to which the prisoner can advance." *Id.*

In this lawsuit, Plaintiff complains of incidents that allegedly occurred on July 15, 2025. (Rec. doc. 1 at 3). Plaintiff filed ARP RCC-2025-484 on August 6, 2025. (Rec. doc. 14-3 at 2-4). Plaintiff's ARP contained multiple and distinct complaints and allegations against various RCC personnel, which allegedly occurred between June 3, 2025 to July 16, 2025. (*Id.*). On August 11, 2025, the Warden rejected Plaintiff's ARP because it was repetitive of another ARP (*i.e.*, a duplicate request) and because it contained multiple – as opposed to individual – complaints. (Rec. doc. 14-3 at 5). Plaintiff alleges that "[he] filed Arp on 8-11-25 and was

9

denied due to having multiply complaints in one arp.  I then broke down each situation that occur in 6 arps on 8-13-25 and still haven't received a reply.  Here is a copy of the response, from them denying me and a copy of the Arp that was denied."  (Rec. doc. 1 at 2).  The records maintained and reviewed by RCC's Administrative Program Specialist C Rowell confirm that Plaintiff did not correct and resubmit his ARP after it was denied, took no further action in connection with his ARP, and filed no new ARP subsequent to the rejection of ARP RCC-2025-484 on August 11, 2025.  (Rec. doc. 14-4 at ¶¶ 20-22).

It is axiomatic that rejected grievances, such as the one here, do not satisfy the exhaustion requirement.[3]  Specifically, the Louisiana Administrative Code provides:

> [P]roper exhaustion only occurs when an offender files a timely and procedurally proper request for remedy, which after it is accepted, is addressed on the merits, at both the first and second step. A request for administrative remedy which is rejected is not considered properly exhausted, as such request has not been addressed on its merits at either of the two steps.

La. Admin. Code tit. 22, Pt. I, § 325(E); *see also id.* § 325(I)(1)(c)(iv) ("The offender has not properly exhausted administrative remedies if his request is rejected for any of the reasons

---

[3] *Smith v. Edwards*, No. 21-694, 2024 WL 1152274, at *3 (M.D. La. Feb. 14, 2024) (citing *Ancar v. Leblanc*, No. 17-913, 2021 WL 2482694, at *3 (M.D. La. Jun. 17, 2021) (dismissing action for failure to exhaust when plaintiff proceeded directly to the Court after his grievance was rejected at the first step)); *see also Abbott v. Babin*, 587 F. App'x 116, 118 (5th Cir. 2014) ("Here, the ARP screening officer rejected Abbott's ARP because it contained references to more than the single incident upon which he sought relief.  After his ARP was rejected, Abbott resubmitted the exact complaint already rejected.  Because of the failure to submit a procedurally-acceptable ARP complaint, the merits of his allegations were never considered under the First Step of the ARP. Consequently, Abbott failed properly to exhaust his administrative remedies.") (citations omitted); *Perez v. La. Dep't of Pub. Safety & Corr.*, 395 So. 3d 286, 288 (La. Ct. App. 2024) ("Since Mr. Perez's request was rejected during screening and he did not resubmit a request for an ARP with the noted deficiency corrected, his request for an ARP was not accepted for consideration, and as such, his administrative remedies could not be exhausted. As Mr. Perez failed to exhaust his administrative remedies under the ARP, there is no subject matter jurisdiction for judicial review of his grievance.") (internal citations omitted); *Allen v. La. Dep't of Pub. Safety & Corr.*, 320 So. 3d 1175, 1178 (La. Ct. App. 2021) ("Since Allen's ARP was rejected during screening and he did not resubmit a request for an ARP with the noted deficiency corrected, his request for an ARP was never accepted for consideration, and as such, his administrative remedies could not be exhausted.").

listed above."). Specialist Rowell has custody of and personally searched the ARP records for filings by Plaintiff. (Rec. doc. 14-4 at ¶ 16). The Warden rejected Plaintiff's ARP RCC-2025-484 on August 11, 2025 as it was repetitive of another ARP and it contained multiple complaints. (Rec. doc. 14-3 at 5). Plaintiff received notice of the rejection on August 12, 2025. (*Id.* at 6). Had Plaintiff corrected the noted deficiencies in his ARP and resubmitted his request, it would have been assigned a new ARP number. (Rec. doc. 14-4 at ¶ 21). However, the records show that Plaintiff did not take any further action in connection with ARP RCC-2025-484 after it was rejected, did not correct the noted deficiencies and resubmit his request, and did not file any new ARP subsequent to the rejection of ARP RCC-2025-484. (*Id.* at ¶¶ 20-22). Accordingly, Plaintiff did not complete the two-step process as to ARP RCC-2025-484 on which Plaintiff bases his Complaint, as Plaintiff's ARP was never considered on the merits at either the first or second step. Thus, the Court finds that Plaintiff failed to exhaust his administrative remedies in connection with ARP RCC-2025-484 before filing suit.

Defendants also ask the Court to dismiss Plaintiff's claims with prejudice. As outlined above, Louisiana's two-step ARP requires that an inmate initiate the first step by submitting a grievance to the Warden briefly setting out the basis for his claim and relief sought within 90 days of the alleged event or incident of which he complains. At the screening stage, Plaintiff's ARP was rejected for containing multiple complaints and for repeating another ARP. (Rec. doc. 14-3 at 5). As such, Plaintiff's ARP never proceeded to the first step, and exhaustion did not occur. At this late date, well over 90 days have elapsed since the events complained of in Plaintiff's deficient ARP, which was rejected at the screening stage. *See Perez*, 395 So. 3d at 288 ("Since Mr. Perez's request was rejected during screening and he did

not resubmit a request for an ARP with the noted deficiency corrected, his request for an ARP was not accepted for consideration, and as such, his administrative remedies could not be exhausted.").

As discussed above, Plaintiff's ARP complains of incidents that allegedly occurred between June 3, 2025 through July 16, 2025.  Plaintiff's Complaint specifically complains only of incidents that allegedly occurred on July 15, 2025.  Plaintiff's ARP was rejected during the screening stage, requiring him to "correct the noted deficiencies and resubmit the request to the ARP screening officer."  La. Admin. Code, tit. 22, Pt. I, § 325(I)(1)(c)(iii).  Plaintiff did not resubmit his request.  If Plaintiff attempted, at this late stage, to file a new ARP due to the rejection of ARP RCC-2025-484, that ARP would be untimely, as well over 90 days have elapsed since the events complained of in ARP RCC-2025-484.  As such, dismissal with prejudice is warranted.  *See Donahue v. Wilder*, 824 F. App'x 261, 267 (5th Cir. 2020) (dismissing plaintiff's complaint for failure to exhaust with prejudice as plaintiff failed to seek sheriff's review of the rejected complaint, noting that "[f]ailure to exhaust 'usually results in a dismissal without prejudice,' but with prejudice dismissal is warranted when it is 'too late for the plaintiff to exhaust.  Here, Donahue's five-day window to seek the Sheriff's review of the Warden's decision has indisputably come and gone.  Accordingly, the summary judgment is AFFIRMED, but we MODIFY that judgment to dismiss the § 1983 claims with prejudice.  Donahue's state-law claims were properly dismissed without prejudice.  *See* LA. STAT. ANN, § 15:1184(A)(2).") (citing *Dawson Farms, L.L.C. v. Farm Serv. Agency*, 504 F.3d 592, 607 (5th Cir. 2007)).

## IV.    Conclusion

Accordingly, and for the foregoing reasons,

**IT IS ORDERED** that the Motion for Summary Judgment (rec. doc. 14) is **GRANTED**.

New Orleans, Louisiana, this __23rd__ day of _____April_____, 2026.

 

 

_____

    **MICHAEL B. NORTH**
    **UNITED STATES MAGISTRATE JUDGE**